UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JAMES B. WOLFF and                              CIVIL NO. 13-2175 (PJS/JSM)
CHERYL A. WOLFF,

　　　　　Plaintiffs,

v.                                              <u>REPORT AND RECOMMENDATION</u>

THE BANK OF NEW YORK MELLON f/k/a
The Bank of New York as Trustee for
CWMBS, Inc., CHL Mortgage Pass-
Through Trust 2007-18, Mortgage Pass-
Through Certificates, Series 2007-18,
MORTGAGE ELECTRONIC
REGISTRATION SYSTEM, INC.,
MERSCORP, INC., and also all other persons,
unknown claiming  any right, title, estate, interest,
or lien in the  real estate described
in the complaint herein,

　　　　　Defendants.

This matter came before the undersigned on defendants' Motion to Dismiss

[Docket No. 4].  This matter has been referred to the undersigned Magistrate Judge for

a Report and Recommendation by the District Court pursuant to 28 U.S.C.

§ 636(b)(1)(A), (B) and Local Rule 72.1(c).  This Report and Recommendation is being

issued based on the parties' written submissions.

Plaintiffs seek to invalidate the foreclosure of the mortgage on their home.

Plaintiffs assert three claims against defendants the Bank of New York Mellon

("BNYM"), Mortgage Electronic Registration System, Inc. ("MERS"), and MERSCORP

Holdings, Inc.:[1] (1) quiet-title, to determine adverse claims under Minn. Stat. § 559.01;

---

[1]       In the caption of the Complaint, plaintiffs also purport to sue "all other persons
unknown claiming any right, title, estate, interest, or lien in the real estate described in

(2) declaratory judgment; and (3) slander of title.  For the reasons below, the Court recommends that defendants' Motion to Dismiss be granted and plaintiffs' claims be dismissed with prejudice.

## I.   BACKGROUND

On July 22, 2013, plaintiffs sued defendants in state court.  Notice of Removal, Ex. A (Complaint) [Docket No. 1-1].  Defendants removed the suit to Federal District Court on August 12, 2013, pursuant to 28 U.S.C. §1332(a).  Notice of Removal [Docket No. 1].

The facts bearing on the motion to dismiss are as follows.  Plaintiffs entered into a Note and Mortgage with Countrywide Bank FSB ("Countrywide") on August 20, 2007, for property located in Buffalo, Minnesota ("Property").  Complaint, ¶ 6, Ex. 1 (Mortgage).  MERS is the original Mortgagee under the Mortgage.  Complaint, Ex. 1. The Mortgage was recorded on August 30, 2007, with the Wright County Office of the Recorder.  Id.

Plaintiffs alleged that Countrywide and BNYM's predecessors in interest securitized their Mortgage into a mortgage-backed security trust entitled "CWMBS, Inc., CHL Mortgage Pass-Through Trust 2007-18, Mortgage Pass-Through Certificates, Series 2007-18."  Id., ¶ 8.  The closing date of the purported trust was listed as September 28, 2007.  See Complaint, ¶ 14; Declaration of William Butler [Docket No.

---

the complaint herein." As "[t]here are no factual allegations sufficient to identify these unnamed defendants or state a claim against them," the Court therefore recommends that all claims against them be dismissed.  See Sonsalla v. Mortg. Elec. Registration Sys., Inc., Civ. No. 13-659, 2013 WL 4052825, *1 (D. Minn. Aug. 9, 2013) (citing Estate of Rosenberg ex rel. Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995) (affirming dismissal of unidentified defendants about whom no factual allegations were made)).

13] ("Butler Decl."), Ex. 3 (Definitions Section of the Pooling and Servicing Agreement). According to plaintiffs, the securitization process was governed by a Pooling and Servicing Agreement ("PSA").  See Complaint, ¶ 8, Ex. 2 (excerpts from the PSA).

Pursuant to Section 2.01 of PSA, within 30 days following the closing date of the trust, the depositor was required to deliver to the trustee, for the benefit of the certificateholders, the original mortgage note along with "intervening endorsements showing a complete chain of endorsement from the originator to the Person endorsing the Mortgage Note. . . ."  Id., ¶ 10, Ex. 2.  In addition, as to mortgages where MERS is the original mortgagee, Section 2.01 required that either the original mortgage or a copy of the mortgage, with recording information, be delivered to the trustee.  Id., Section 2.01(c)(ii); Butler Decl., Ex. 1 (same).  "In the case of each Mortgage Loan that is not a MERS Mortgage Loan, a duly executed assignment of the Mortgage, or a copy of such assignment, with recording information . . . together with, except as provided below, all interim recorded assignments of such a mortgage or a copy of such assignment" was to be delivered to the trustee.  Id., Section 2.01(c)(iii) (emphasis added); Butler Decl., Ex. 1 (same).  Plaintiffs maintained that the PSA required that assignments of the mortgage be prepared and delivered to and from: (1) Countrywide, as the originator of the loan, to Countrywide Home Loan Inc. ("CHLI"), as the seller; (2) from CHLI to CWMABS, Inc., as depositor; and (3) from CWMABS, Inc. to BNYM, as trustee.  Complaint, ¶ 11.

Section 2.04 of the PSA provides in relevant part:

> The Depositior hereby represents and warrants to the Trustee with respect to each Mortgage Loan . . . , that as of the Closing Date, and following the transfer of the Mortgage Loans to it by each Seller, the Depositor had good title to the Mortgage Loans and the Mortgage Notes were subject to no offsets, defenses or counterclaims.

> The Depositor hereby assigns, transfers and conveys to the
> Trustee all of its rights with respect to the Mortgage Loans...

Id., Ex. 2; Butler Decl., Ex. 4 (PSA Section 2.04).  Plaintiffs claimed that the language of Section 2.04 of the PSA means that BNYM, as Trustee, received the delivery of the Mortgage, the Note and all necessary assignments of the Mortgage.  Complaint, ¶ 15. In addition, pursuant to Section 2.01, and Exhibit F-1 of the PSA, plaintiffs claimed that BNYM was required to certify as of the closing date of the trust, that it received all duly endorsed notes and assignments of the Mortgage.  Id., ¶ 16.  Section 2.01 of the PSA provides that "[e]ach Seller, concurrently with the execution and delivery hereof, hereby sells, transfers, assigns. . . and otherwise conveys to the Depositor, . . . all of its respective right, title and interest in and to the related Initial Mortgage. . . ."  Id., Ex. 2 (PSA Section 2.01(a)).  The PSA then requires the depositor to transfer, assign or otherwise convey to the trustee for the benefit of the certificateholder all right and interest of the depositor.  Id. (Section 2.01(b)).  A form "Initial Certification of Trustee Form (Initial Mortgage Loans)" allows the Trustee to represent, as to each mortgage listed in the Mortgage Loan Schedule, that it has received the original note and an executed assignment of the mortgage.  Id. (PSA, Exhibit F-1).

Plaintiffs claimed that the PSA is governed by New York law, and that pursuant to the decision in Wells Fargo Bank, N.A. v. Erobobo, 972 N.Y.S.2d 147 (N.Y. Sup. Ct. 2013), if a trust's asset is not actually transferred into a trust in accordance with the terms and timing indicated by the trust, then the trust's claim to that asset is void. Complaint, ¶¶ 13, 17.

On October 23, 2009, James Geske, as Vice President of MERS, executed an Assignment of Mortgage from MERS to BAC Home Loans Servicing, LP, which was recorded on October 30, 2009 with Wright County Office of the Recorder. Id., ¶ 22, Ex. 4 (October 23, 2009 Assignment of Mortgage). Plaintiffs alleged that Geske is an attorney employed by Wilford & Geske. Id., ¶ 22.

On April 29, 2010, Lawrence Wilford, on behalf of Wilford & Geske, as the attorney-in-fact for BAC Home Loans Servicing, LP, executed an Assignment of Mortgage from BAC Home Loans Servicing, LP to BNYM as the trustee for CWMBS, Inc., CHL Mortgage Pass-Through Trust 2007-18, CHL Mortgage Pass-Through Certificates, Series 2007-18, which was recorded with the Wright County Office of the Recorder on May 25, 2010. Id., ¶ 23, Ex. 5 (April 29, 2010 Assignment of Mortgage).

On May 11, 2010, David Perez, Assistant Vice President of BAC GP LLC, General Partner of BAC Home Loan Servicing LP, as the attorney-in-fact for trustee BNYM, executed a Notice of Pendency & Power of Attorney to Foreclose Mortgage, which authorized the law firm of Wilford & Geske to foreclose on the Mortgage by advertisement and "to do all things necessary and incident thereto." Id., ¶ 24, Ex. 6 (May 11, 2010 Notice of Pendency & Power of Attorney to Foreclose Mortgage). The Notice of Pendency & Power of Attorney to Foreclose Mortgage was recorded with the Wright County Office of the Recorder on May 25, 2010. Id.

On July 30, 2012, Geske, President of Wilford & Geske, as the attorney-in-fact for Bank of America, N.A. ("BOA"), successor by merger to BAC Home Loans Servicing, LP, and as the attorney-in-fact of BNYM (trustee for CWMBS), executed a Notice of Pendency of Proceeding & Power of Attorney to Foreclose Mortgage, which authorized

the law firm of Wilford & Geske to foreclose on the Mortgage by advertisement and "to do all things necessary and incident thereto." Id., ¶ 25, Ex. 7 (July 30, 2012 Notice of Pendency & Power of Attorney to Foreclose Mortgage).  This Notice of Pendency & Power of Attorney was recorded with the Wright County Office of the Recorder on July 31, 2012. Id.

On January 22, 2013, Wilford & Geske, on behalf of BNYM, appeared at the sheriff's sale and exercised the power of sale clause in the Mortgage by bidding the debt owed. Id., ¶ 26.  The Certificate of Sale and Foreclosure Record was recorded in the Wright County Office of the Recorder. Id., Ex. 8 (Sheriff's Certificate of Sale and Foreclosure Record).  Plaintiffs denied that BNYM had any right to make a credit bid or exercise the power of sale at the foreclosure sale, and denied that BNYM was the holder of the note on the date of the foreclosure. Id., ¶ 26.

Plaintiffs pled that on or about April 13, 2011, Wilford & Geske received constructive notice via an Order and Consent Decree between BOA and the Office of the Comptroller of Currency that BOA had engaged in "unsafe and unsound" banking practices in conducting foreclosures, and that BOA had agreed to comply with MERSCORP Rules. Id., ¶¶ 27-29, Ex. 9 (Consent Order and Stipulation and Consent).

Plaintiffs asserted that the foreclosure of the Mortgage was invalid because under New York law, BNYM, along with its predecessors in interest, did not have the authority to assign any interest in the Mortgage, execute foreclosure related documents, make a credit bid at the sheriff's sale or exercise the power of sale in the Mortgage, as the assignments of the Mortgage violated the terms of the trust that required execution

and delivery of all assignments of the Mortgage prior to September 27, 2007.  Id., ¶¶ 32, 33.

In the alternative, plaintiffs asserted that if BNYM did meet the terms of the PSA, the foreclosure was void because the PSA required BNYM to certify receipt of the assignments of the mortgage that were not recorded prior to commencement of the foreclosure, pursuant to Minn. Stat. § 580.02.  Id., ¶ 34.  This included the assignments from Countrywide to Countrywide Home Loans Inc., from Countrywide Home Loans Inc. to CWMBS Inc., and from CWMBS Inc. to BNYM, as trustee.  Id.

Plaintiffs also claimed that the foreclosure was invalid on the basis: (1) there was no "of record" evidence of Geske's authority to sign the October 23, 2009 Assignment of Mortgage on behalf of MERS in violation of Minn. Stat. §§ 507.413 and 580.05; (2) there was no "of record" evidence of Wilford & Geske's power to execute the April 29, 2010 Assignment of Mortgage on behalf of BAC Home Loans Servicing LP in violation of Minn. Stat. § 580.05; (3) there was no "of record" evidence of Perez's authority to sign the May 11, 2011 Notice of Pendency & Power of Attorney to Foreclose Mortgage on behalf of BAC GP LLP or BAC Home Loans Servicing LP in violation of Minn. Stat. § 580.05; and (4) there was no "of record" evidence of Geske's power to sign the July 30, 2012 Notice of Pendency & Power of Attorney to Foreclose Mortgage.  Id., ¶ 35.

Plaintiffs alleged the following causes of action:

In Count I, Determination of Adverse Claims, Minn. Stat. § 559.01, plaintiffs asserted a quiet title action seeking a determination regarding defendants' adverse interests in the Property.  Id., ¶¶ 36-41.  According to plaintiffs, in a quiet title action, the burden of proof is on the party asserting an adverse interest in the property and that

7

defendants must prove their title to the Mortgage by preponderance of the evidence. Id., ¶¶ 39, 40.

In Count II, plaintiffs sought a declaratory judgment under Minn. Stat. § 555.02 that the BNYM's interest in the Property and Mortgage was void, the foreclosure is void, and that plaintiffs remain the owner of the Property in fee title. Id., ¶¶ 42-44.

In Count III, alleging slander of title, plaintiffs asserted that defendants drafted and recorded documents that were false and not executed by legally authorized persons, and that defendants knew, or should have known, that the documents were false. Id., ¶¶ 45-46.

As relief, plaintiffs sought: (1) a determination of adverse interest in the Property; (2) a declaration that the Mortgage, the Sheriff's Certificate of Sale, the assignments of mortgage, notices of pendency, and powers of attorney were void; (3) a declaration that plaintiffs were the owner of the Property in fee title; and (4) money damages. Id., Prayer for Relief.

Defendants moved to dismiss the Complaint arguing that plaintiffs failed to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As to the quiet title claim, defendants contended that plaintiff's conclusory and speculative allegations did not meet the pleading standards required by Rules 8 and 12(b)(6); plaintiffs lacked the requisite standing to assert violations based on the PSA; in any event the PSA does not require the assignments alleged by plaintiffs as to MERS mortgages; and the claim is barred by the doctrine of unclean hands. Defendants' Memorandum of Law in Support of Motion to Dismiss [Docket No. 6], pp. 5-13.

Defendants submitted that plaintiffs' slander of title claim failed because plaintiffs alleged no facts to support the elements of the claim.  Id., pp. 16-18.  As for plaintiffs' declaratory judgment count, defendants asserted that a request for declaratory relief is not an actual cause of action – it is merely a remedy – and as plaintiffs' other substantive claims fail, this remedy must fail as well.  Id., pp. 14-16.

For the reasons set forth below, the Court concludes that plaintiffs fail to state a claim for relief and therefore, defendants' motion to dismiss should be granted.

## II.    STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaints must be taken as true.  Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).  In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than a unadorned, the-defendant-unlawfully-harmed-me-accusation."  Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).  A "pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).   Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Id. (quoting Twombly, 550 U.S. at 570).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 677 (quoting Twombly, 550 U.S. at 556).   "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted).   "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss, without converting the motion to dismiss to a motion for summary judgment.   Fed. R. Civ. P. 12(d).   "The court, however, 'may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings,'" without converting the motion into one for summary judgment.   See Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913, 916 (8th Cir. 2008) (quoting Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted).); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a

pleading is a part of the pleading for all purposes."); <u>Mattes v. ABC Plastics, Inc.</u>, 323

F.3d 695, 697 n.4 (8th Cir. 2003).

For the reasons set forth below, the Court concludes that plaintiffs fail to state a

claim for relief and therefore, defendants' motion to dismiss should be granted.

## III.   DISCUSSION

### A.   <u>Quiet Title</u>

In Minnesota, "[a]ny person in possession of real property personally. . . may

bring an action against another who claims an estate or interest therein, or a lien

thereon, adverse to the person bringing the action, for the purpose of determining such

adverse claim and the rights of the parties, respectively."  Minn. Stat. § 559.01.

Plaintiffs argued that their quiet title claim was proper since all they had to plead

under Minnesota law was that they were in possession of the Property and defendants

had a claim adverse to them.[2]  <u>See</u> Memorandum in Opposition to Federal National

---

[2]   The Minnesota Court of Appeals disagrees with plaintiffs' argument that a quiet title claim premised solely on allegations that they were in possession of the Property and defendants had a claim adverse to them states a cause of action under Minnesota law.  In a case similar to the instant suit and relying on the standards for pleading articulated in <u>Twombly</u>, the Court of Appeals stated:

> In their amended complaint, appellants summarily claim that they are in possession of their respective properties and that Deutsche Bank's mortgage liens are invalid. Their only argument in this appeal is that these summary allegations are sufficient to overcome a motion to dismiss. We disagree.

> Adopting appellants' position would mean that quiet-title claims will never be dismissed when merely the two facts of possession and invalid mortgage lien are alleged, without regard for how these facts would give rise to an entitlement to relief. This result undermines the court's duty to determine "whether the complaint sets forth a legally sufficient claim for relief." <u>See</u> Hebert [v. City of Fifty Lakes, 744 N.W.2d 226,

Mortgage Association's Motion to Dismiss [Docket No. 12] ("Pl.'s Mem."), pp. 8-11. According to plaintiffs, once these elements were pled, the burden shifted to defendants to prove the validity of their claim. Id. Additionally, plaintiffs maintained the Federal Rules of Civil Procedure do not alter the burden of proof on their state law quiet title claim. Id. Plaintiffs then contended that their quiet title claim was viable because if BNYM was relying on the recorded assignments and notices of pendency, then by failing to deliver these documents into the trust by September 27, 2007, the trust's claim to the Mortgage was void under New York law. Id., pp. 12-13. In the alternative, plaintiffs maintained that even if BNYM had followed the PSA requirements, the foreclosure was void because BNYM failed to record the all of the assignments prior to the commencement of the foreclosure by advertisement as required by Minn. Stat. § 580.02. Id., p. 14. Plaintiffs also contended that the May 11, 2011 Notice of Pendency & Power of Attorney to Foreclose Mortgage was robo-signed, which broke the chain of title and rendered the foreclosure void.[3] Id. Finally, plaintiffs claimed that they had standing to challenge the PSA and that the doctrine of unclean hands does not bar their quiet title claim. Id., pp. 15-20.

---

229 (Minn.2008)]. Beyond the summary facts alleged, appellants must present more than just labels or conclusions in their complaint to survive a motion to dismiss.

Mutua v. Deutsche Bank Nat. Trust Co., 2013 WL 6839723, at *2 (Minn. App. Dec. 30, 2013).

[3]   This argument was premised on exhibits attached to the Declaration of William Butler that were submitted by plaintiffs in connection with their opposition. See Butler Decl., Exs. 10, 11. No allegations about robo-signing were made in the Complaint, nor were the exhibits attached to the Complaint. As such, they are not properly before this Court on a motion to dismiss. See Morgan Distrib. Co. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (citation and marks omitted).

Plaintiffs' arguments fail for many reasons.

First, plaintiffs' argument that the Court should apply the Minnesota state court pleading standards to their quiet title claim is dead on arrival.  Plaintiffs' counsel has made this exact argument in the past, and the Eighth Circuit could not have been more emphatic in its response: "[w]e apply federal pleading standards—Rules 8 and 12(b)(6)—to the state substantive law to determine if a complaint makes out a claim under state law."  Karnatcheva v. JPMorgan Chase Bank, NA, 704 F.3d 545, 548 (8th Cir. 2013), cert. denied 134 S.Ct. 72 (2013); see also Dunbar v. Wells Fargo Bank, N.A., 709 F.3d 1254, 1257 (8th Cir. 2013) (quoting Karnatcheva); Novak v. JP Morgan Chase Bank, N.A., 518 F. App'x 498, 501 (8th Cir. 2013); 518 (quoting Karnatcheva); Gharwal v. Federal Nat'l Mortgage Ass'n, Civ. No. 13-685 (PJS/JSM), 2013 WL 4838904, at *2 (D. Minn. Sept. 11, 2013) (noting that the Eighth Circuit has "squarely and repeatedly rejected" this argument).

In addition, the Eighth Circuit in Karnatcheva rejected the "burden of proof" argument in a quiet title action advocated by plaintiffs.  704 F.3d at 548.  As the court explained in Gharwal:

> Karnatcheva rejected that argument, specifically holding that § 559.01 and the other authority on which [plaintiff] relies 'are not state substantive standards that govern the success of a quiet title claim.  Karnatcheva, 704 F.3d at 548. Whether or not the Eighth Circuit's holding was "error" is not for this Court to decide; Karnatcheva is binding precedent, and this Court must apply it.  The Court notes, however, that although he was addressing a different issue, plaintiff's counsel himself has conceded in the past "that, under Fed. R. Civ. P. 11, a quiet-title claim must be supported by an objectively reasonable basis for believing that the defendant's asserted interest in the property is invalid."  Welk v GMAC Mortg., LLC, 850 F. Supp.2d 976, 988 (D. Minn. 2012), aff'd, 720 F.3d 736 (8th Cir. 2013).  Here, plaintiffs

> quiet title claims are based only on conclusory statements and speculation, but no facts. The claim fails under Rule 12(b)(6).

2013 WL 4838904, at *3.

Thus, this Court has reviewed plaintiffs' quiet title claim applying the standard governing Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

Second, the documents referenced in and attached to the Complaint show an unbroken chain of title to BNYM via a recorded assignments of the Mortgage from MERS to BAC Home Loans Servicing, LP on October 23, 2009, from BAC Home Loans Servicing, LP to BNYM (as trustee) on April 29, 2010, and a properly recorded July 30, 2012 Notice of Pendency of Proceeding and Power of Attorney to Foreclose Mortgage. Complaint, Exs. 4 (October 23, 2009 Assignment of Mortgage), 5 (April 29, 2010 Assignment of Mortgage), 7 (July 30, 2012 Notice of Pendency & Power of Attorney), 8 (Sheriff's Certificate of Sale and Foreclosure Record). Thus, not only is there no factual support for plaintiffs' bald assertions, the record shows the exact opposite—there were no unrecorded assignments of the Mortgage and the foreclosure was proper.

Third, plaintiffs' reliance on the PSA for the proposition that defendants failed to deliver to the trust several unrecorded assignments of the mortgage is without merit. While the PSA requires the delivery of assignments to the trust for non-MERS mortgages, it does not require such a delivery for a "MERS Mortgage Loan." See Complaint, Ex. 2 (Section 2.01(c)(iii)). The primary requirement for a MERS mortgage is that the original mortgage or a copy of the mortgage is delivered to the trust. Id. (Section 2.01(c)(ii)). In this case, MERS is the original Mortgagee under the Mortgage

(Complaint, Ex. 1 (Mortgage)), and as such, the assignments alleged by plaintiffs were not required to be delivered to the trust pursuant to the PSA.[4]

Further, the fact that plaintiffs allege that a PSA establishes that there must be an unrecorded assignment at some point in time, does not make it so.  See Dunbar v. Wells Fargo Bank, N.A., 853 F. Supp.2d 839, 848 (D. Minn. 2012), aff'd, 709 F.3d 1257 (8th Cir. 2013) ("Plaintiffs appear to argue that an unrecorded assignment from Option One to Wells Fargo must exist that renders invalid the 2010 assignment from Option One to Wells Fargo.  The PSAs do not, however, say that Option One actually assigned the mortgage years ago, only that it had agreed to do so. Mere speculation about what may have happened does not allow a plausible inference when defendants present a

_____

[4]    In any event, courts have noted that documents governing mortgage-backed trusts often do not require a chain of written mortgage assignments when, as here, MERS is named the nominee for the lender and is listed as the Mortgagee.  See, e.g., Wollmering v. JPMorgan Chase Bank, N.A., No. A12–1926, 2013 WL 3779217, at *5 (Minn. Ct. App. July 22, 2013) ("Appellants argue that the Wollmering and Bakke/Fink mortgages were parts of trusts that required mortgage assignments according to the trust terms and that '[t]he trust documents are therefore evidence of the unrecorded assignments.' Section 2.01 of the PSAs does require that Structured Asset deposit with JPMorgan Chase the original mortgage. But under the express language of the PSAs, the requirement that Structured Asset deposit a certified copy of the assignment of the mortgage to JPMorgan Chase applies 'unless the Mortgage Loan is a MOM loan,' and a Mom Loan is defined as '[w]ith respect to any Mortgage Loan, MERS acting as the mortgagee of such Mortgage Loan, solely as nominee for the originator of such Mortgage Loan and its successors and assigns, at the origination thereof.'  Thus, Structured Asset was not required to deposit certified copies of assignments of the Wollmering and Bakke/Fink mortgages, which named MERS as mortgagee as nominee for the originator and its successors, and the trust documents are not evidence of unrecorded assignments."); Colton v. U.S. Nat. Bank Ass'n, Civil Action No. 3:12-CV-3584-D, 2013 WL 1934560, at *4 (N.D. Tex. May 10, 2013) ("[I]t is reasonable that the PSA would not require that a MERS-designated mortgage loan be assigned to U.S. Bank to evidence transfer of ownership to the Trust. The purpose of MERS is to avoid the task of preparing and recording separate assignments for each mortgage conveyance.") (citing MERS: The Mortgage Electronic Registration System, 63 Consumer Fin. L.Q. Rep. 262, 263 (2009)).

facially valid record of assignment from Option One to Wells Fargo.  As a result, dismissal is warranted.").

However, even if the Assignment of Mortgage was required to be delivered to the trust under the PSA, New York law does not void the BNYM's interest in the Mortgage. Pursuant to New York law, "every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void." N.Y. Est. Powers & Trusts Law § 7–2.4.  Plaintiffs cite to Wells Fargo Bank, N.A. v. Erobobo, 39 Misc.3d 1220(A), 972 N.Y.S.2d 147, at *8-9 (N.Y. Sup. 2013), in which the court concluded that the transfer of an assignment of a mortgage into a trust in violation of the terms of the PSA—made 18 months after the trust had "closed" and had not been assigned in by the depositor—rendered the assignment void under New York law.  However, the majority of courts that have examined Erobobo have criticized the decision and held that under New York law, an assignment of a mortgage into a trust in violation of the terms of the PSA is voidable, and not void, as the action can be ratified by the beneficiaries.  See, e.g., Felder v. Countrywide Home Loans, Civil Action No. H–13–0282, 2013 WL 6805843, at *19 (S.D. Tex. Dec. 20, 2013) (quoting Green v. Bank of Am. N.A., No. H–13–1092, 2013 WL 3937070, at *3 (S.D. Tex. July 30, 2013), citing Mooney v. Madden, 193 A.D.2d 933, 597 N.Y.S.2d 775, 776 (N.Y. App. Div. 1993)) ("'Courts applying New York law have treated actions by trustees as voidable.'"); Halacy v. Wells Fargo Bank, N.A., NO. CIV.A. 12-11447-TSH, 2013 WL 6152351, at *3 (D. Mass. Nov. 21, 2013) (citing Koufos v. U.S. Bank N.A., 939 F. Supp.2d 40, 49 n. 5, 56 n. 2 (D. Mass. 2013) (criticizing Erobobo and finding that a "non-PSA-compliant" transaction is typically "voidable," rather than "void" under New

York law)); <u>Deutsche Bank Nat. Trust Co. v. Adolfo</u>, NO. 12 C 759, 2013 WL 4552407, at *3 (N.D. Ill. Aug. 28, 2013) ("we are persuaded by the courts that have held that a transfer that does not comply with a PSA is voidable, not void.") (citations omitted); <u>Calderon v. Bank of America N.A.</u>, 941 F. Supp.2d 75, 7663 (W.D. Tex. 2013) (finding that New York Courts have held that a beneficiary can ratify a trustee's <u>ultra</u> <u>vires</u>, and if an act may be ratified, it is voidable rather than void) (citing <u>Mooney v. Madden</u>, 193 A.D.2d 933, 597 N.Y.S.2d 775 (1993); <u>Matter of Estate of Janes</u>, 165 Misc.2d 743, 630 N.Y.S.2d 472, 477 (Sur. 1995), <u>aff'd as modified sub nom.</u> <u>Matter of Janes</u>, 223 A.D.2d 20, 643 N.Y.S.2d 972 (1996), <u>aff'd sub nom.</u> <u>Matter of Estate of Janes</u>, 90 N.Y.2d 41, 659 N.Y.S.2d 165, 681 N.E.2d 332 (N.Y. 1997); <u>Leasing Serv. Corp. v. Vita Italian Restaurant</u>, 171 A.D.2d 926, 566 N.Y.S.2d 796, 797-98 (1991); <u>Hine v. Huntington</u>, 118 A.D. 585, 103 N.Y.S. 535, 540 (1907); 106 N.Y. Jur.2d Trusts § 431 ("[T]rustee may bind trust to an otherwise invalid act or agreement which is outside the scope of the trustee's power when beneficiary consents to or ratifies the trustee's <u>ultra</u> <u>vires</u> act or agreement.")) (citations omitted).

Fourth, Court rejects any assertion by plaintiffs that the May 11, 2010 Notice of Pendency & Power of Attorney to Foreclose Mortgage, that was allegedly robo-signed by David Perez,[5] rendered the foreclosure void.  It was the July 30, 2012, Notice of

---

[5]     Plaintiffs apparently are relying on a forensic examination prepared by McDonnell Property Analytics, Inc. of the assignment of mortgages in 2010 in the Essex Southern District Registry of Deeds to support their assertion that Perez was a robo-signer.  <u>See</u> Butler Decl., Exs. 10 (McDonnell Property Analytics Forensic Examination), 11 (Affidavit of John L. Obrien, Register of Deeds Southern Essex District).  Even if this forensic examination were properly before this Court on a motion to dismiss, which it is not, the claim that Perez, the individual who signed the May 11, 2010 Notice of Pendency & Power of Attorney to Foreclose Mortgage, was a "robo or surrogate signer" for assignments recorded in another part of the country, does not create a "plausible

Pendency & Power of Attorney to Foreclose Mortgage that was operative as to the foreclosure, as the May 11, 2010 Notice of Pendency was more recorded than six months before the first date of publication of the foreclosure notice of November 1, 2012. See Minn. Stat. § 580.032, subd. 3 ("A person foreclosing a mortgage by advertisement shall record a notice of the pendency of the foreclosure with the county recorder or registrar of titles in the county in which the property is located before the first date of publication of the foreclosure notice but not more than six months before the first date of publication.") (emphasis added).

Fifth, even if the PSA did apply to plaintiff's mortgage or there was any truth to plaintiff's speculative statements about the lack of signing authority of Perez (as to the May 11, 2010 Notice of Pendency and Power of Attorney to Foreclose Mortgage), Geske (as to the October 23, 2009 Assignment of Mortgage and July 30, 2012 Notice of Pendency & Power of Attorney) and Wilford & Geske (as to the April 29, 2010 Assignment of Mortgage),[6] plaintiffs suffered no injury in fact as a result and, therefore

_____

inference" that Perez did not have the legal authority on behalf of BAC GP LLC to sign the May 11, 2010 Notice of Pendency & Power of Attorney to Foreclose Mortgage or that he "robo-signed" this document.

[6]     To the extent that plaintiffs have alleged that the foreclosure is void because there is no "of record" evidence of the individuals' or entity's power to execute the assignments of mortgage or foreclosure-related documents as required by Minn. Stat. §§ 580.05 and 507.413, (Complaint, ¶ 35), this claim is meritless.

In order to foreclose a mortgage by advertisement, the foreclosing party must meet the mandatory requirements prescribed by the foreclosure by advertisement statutes. Jackson, 770 N.W.2d at 495. In this regard,

> [s]ection 580.02 contains three requirements that must be met before a mortgagee can foreclose by advertisement:
>
> (1) that some default in a condition of such mortgage has occurred, by which the power to sell has become operative;

> (2) that no action or proceeding has been instituted at law to recover the debt then remaining secured by such mortgage ...
>
> (3) that the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded....

Id. at 496 (quoting Minn. Stat. § 580.02).

Minn. Stat. § 580.05 governs the recording of mortgage assignments by an attorney at law.  It provides:

> When an attorney at law is employed to conduct such foreclosure, the authority of the attorney at law shall appear by power of attorney executed and acknowledged by the mortgagee or assignee of the mortgage in the same manner as a conveyance, and recorded prior to the sale in the county where the foreclosure proceedings are had. If such attorney be employed on behalf of such mortgagee or assignee by an attorney in fact, the attorney's authority shall likewise be evidenced by recorded power.

Minn. Stat. § 580.05.

Minn. Stat. § 507.413 states:

> (a)   An assignment, satisfaction, release, or power of attorney to foreclose is entitled to be recorded in the office of the county recorder or filed with the registrar of titles and is sufficient to assign, satisfy, release, or authorize the foreclosure of a mortgage if:
>
> > (1) a mortgage is granted to a mortgagee as nominee or agent for a third party identified in the mortgage, and the third party's successors and assigns;
> >
> > (2) a subsequent assignment, satisfaction, release of the mortgage, or power of attorney to foreclose the mortgage, is executed by the mortgagee or the third party, its successors or assigns; and
> >
> > (3) the assignment, satisfaction, release, or power of attorney to foreclose is in recordable form. . . . .

19

Called "the MERS statute," Minn. Stat. § 507.413 is a recording statute that creates no obligations and does not change the requirements of the foreclosure by advertisement statute; "rather, it uses recording to resolve disputes between parties who have no contractual relationship, but who lay claim to the same title." Jackson, 770 N.W.2d at 494 (citation omitted).

Reading all of these statutes together, it is evident that there is no legal requirement that the origin of an individual's or entity's "authority" must be recorded in order to render the foreclosure of a mortgage valid.

First, "[s]ection 580.02 is strictly construed, and a foreclosing party must demonstrate "exact compliance" with the statute's requirements." Beecroft v. Deutsche Bank Nat. Trust Co., 798 N.W.2d 78, 83 (Minn. Ct. App. 2011), review denied (July 19, 2011) (quoting Jackson, 770 N.W.2d at 494). "Absent strict compliance with section 580.02, the foreclosure proceeding is void." Id. (citing Jackson, 770 N.W.2d at 494).

Second, "[t]he purpose of the statutory recording requirements is to ensure that a mortgagor has notice and an opportunity to redeem." Beecroft, 798 N.W.2d at 83 (citing Jackson, 770 N.W.2d at 495). Therefore, "the plain language of section 580.02 requires only that the mortgage and any assignment of the mortgage be recorded to entitle a mortgage assignee to foreclose by advertisement," and nothing more. Id.

Third, there is nothing in Minn. Stat. § 507.413, § 580.02, § 580.05 or in any other statute that requires that the recording of the source of the authority to execute an assignment of mortgage or the authority to execute foreclosure-related documents by an attorney-in-fact. See Beecroft, 798 N.W.2d at 83 ("Indeed, Minnesota courts have recognized that the power to execute an assignment by an attorney in fact need not be recorded to satisfy the foreclosure-by-advertisement statute."); at 84 ("Applying the plain language of section 580.02, we conclude that there is no requirement to record the instruments authorizing Citi Residential to act as Ameriquest's attorney in fact for mortgage assignments and memorializing the election of the special officers to execute the mortgage assignment for Citi Residential on behalf of Ameriquest. Only the Beecroft mortgage and Ameriquest's assignment of the Beecroft mortgage to Deutsche Bank by Ameriquest's attorney in fact are required to be recorded."); Molde v. CitiMortgage, Inc., 781 N.W.2d 36, 43 (Minn. Ct. App. 2010) (holding that "a document evidencing the authority of an attorney-in-fact to initiate a foreclosure by advertisement" need not be recorded in the tract index against the property); Yang Mee Thao-Xiong, 2013 WL 3788799, at *3 ("Moreover, there is no evidence that the assignment of the mortgage lacked proper authority under Minn. Stat. § 507.413. Plaintiff argues that § 507.413 requires that a power of attorney be recorded prior to commencing a non judicial foreclosure. By its plain language, however, § 507.413 contains no such requirement. Furthermore, § 507.413 has never been interpreted to require such.").

lack standing to pursue a quiet title claim on this basis.  See Novak v. JP Morgan Chase Bank, N.A., Civ. No. 12-589 (DSD/LIB), 2012 WL 3638513, at *6 (D. Minn. Aug. 23, 2012), aff'd, 518 F. App'x 498 (8th Cir. 2013)) (dismissing plaintiffs' complaint with prejudice and noting that they lacked standing to challenge any purported breach of a PSA); Karnatcheva, 704 F.3d at 547 ("The plaintiffs base this request for declaratory relief on allegations that their notes and mortgages were transferred to trusts underlying mortgage-backed securities and that their foreclosures violated the terms of the trust agreements relating to these mortgage-backed securities. But district courts in Minnesota have recently addressed this issue and have uniformly held that mortgagors do not have standing to request declaratory judgments regarding these types of trust agreements because the mortgagors are not parties to or beneficiaries of the

---

In sum, this Court concludes that the "strict compliance" standard applied by the Minnesota courts to the statutes governing foreclosures by advertisement extends only to the recording of mortgages, assignments of mortgages and the power to conduct foreclosure-related proceedings, and no more.  There are no statutes that require the recording of the origin of the individual's or entity's authority to sign the assignments of mortgage or to sign the notice of pendency or powers of attorney.

In any event, in this case on January 19, 2012, a Limited Power of Attorney was recorded with the Wright County Recorder from Bank of America to Wilford and Geske, authorizing Wilford and Geske to act as Bank of America's attorney-in-fact with regard to the execution of notices of pendency, powers of attorney to foreclose mortgages and assignments of mortgages; and on April 20, 2012, BNYM recorded with the Wright County Recorder a Power of Attorney authorizing Bank of America to act as its attorney-in-fact as it relates to the disposition of trust property and the foreclosure of mortgages. See Second Affidavit of Mark G. Schroder [Docket No. 15], Exs. A-B.  These recordings took place prior to the July 30, 2012 Notice of Pendency & Power of Attorney to Foreclose Mortgage executed by Geske and the September 2012 Notice of Foreclosure.  See Embree v. U.S. Bank Nat. Ass'n, 828 N.W.2d 141, 144-46 (Minn. Ct. App. 2013) (finding that the recorded limited power of attorney in the county where the subject property was located, from the holder of the mortgage, U.S. Bank, to Chase, was sufficient pursuant to the requirements of § 580.05 to allow Chase to execute and record a notice of pendency of proceeding and power of attorney to foreclose mortgage, which authorized a law firm to foreclose on the property).

agreements. We believe that the reasoning in these cases is sound, and we adopt it.") (internal citations omitted); <u>Sorem v. Bank of New York Mellon</u>, Civ. No. 13-290 (DWF/JSM), 2013 WL 4611115, at *3 (D. Minn. Aug. 29, 2013) ("Plaintiffs base their claims on the primary argument that the foreclosure is void because unrecorded assignments exist, and in support Plaintiffs argue that BNYM's Pooling and Servicing Agreement requires that an assignment be executed in favor of BNYM. Plaintiffs lack standing to make this challenge.") (citations omitted); <u>Quale v. Aurora Loan Services, LLC</u>, Civ. No. 13-621 (JNE/AJB), 2013 WL 3166584, at *1 (D. Minn. June 20, 2013) ("Insofar as the Quales based their claims on the allegations that an individual lacked authority to execute the assignment of mortgage, the Court rejects this argument because the Quales lack standing to make such a challenge, and even if they did have standing, their claims are fatally implausible and speculative."); <u>Forseth v. Bank of Am., N.A.</u>, Civil No. 13-38 (SRN/TNL), 2013 WL 2297036, at *5 (D. Minn. May 24, 2013) ("The allegations regarding unauthorized signatures on every document related to the foreclosure process for the Forseths' mortgage are similarly implausible and pure speculation.  But even if the signatures were unauthorized, the harm caused by the lack of signing authority is harm to MERS or BAC, in the case of Mr. Bruns, or BAC/Bank of America or Fannie Mae in the case of Mr. McDaniel and Ms. Girvan. There is no allegation in the Amended Complaint that any of these individuals falsely initiated foreclosure proceedings against the Forseths' property, and the documents in the public records belie such a claim in any event. The Forseths defaulted on their mortgage by not making payments as they promised. Even if all three of these individuals lacked signing authority, as the Forseths claim, they have suffered no injury as a result and

therefore have no standing to pursue their claims.") (citations omitted); <u>Kaylor v. Bank of Am., N.A.</u>, Civ. No. 12-1586 (DSD/SER), 2012 WL 6217443, at *5 (D. Minn. Dec. 13, 2012) (finding that even if individual who effectuated the assignment of the mortgage did not have authority to do so, homeowners not a party to the mortgage assignment had no standing to challenge the assignment.); <u>Stinson v. U.S. Bank, N.A.</u>, Civ. No. 12-68 (SRN/AJB), 2012 WL 2529354, at *3 (D. Minn. June 12, 2012) ("[T]o the extent that the [plaintiffs] allege that the defendants did not comply with the provisions of the PSA, the [plaintiffs] have no standing to assert claims on this basis because they are not parties or third-party beneficiaries to such agreements."); <u>Greene v. Home Loan Servs., Inc.</u>, Civ. No. 09-719 (DWF/JJK), 2010 WL 3749243, at *4 (D. Minn. Sept. 21, 2010) ("Plaintiffs do not have standing to bring their challenge regarding the securitization of the mortgage or the Pooling and Service Agreement.  Even assuming this matter was adequately pled, which it was not, Plaintiffs are not a party to the Pooling and Service Agreement and therefore have no standing to challenge any purported breach of the rights and obligations of that agreement.").

Finally, as defendants argued, a quiet title action is a proceeding in equity and as such, a plaintiff who seeks to quiet title must come to court with clean hands.  <u>Haubrich v. U.S. Bank Nat'l Ass'n</u>, Civ. No. 12-565 (DSD/TNL), 2012 WL 3612023, at *3 (D. Minn. Aug. 21, 2012), <u>aff'd</u>, 720 F.3d 979 (8th Cir. 2013); <u>see also</u> <u>Yang Mee Thao-Xiong v. American Mortg. Corp.</u>, Civil No. 13-354 (MJD/TNL), 2013 WL 3788799, at *4 (D. Minn. July 18, 2013) (plaintiff's unclean hands in defaulting on her mortgage prevented her from seeking equitable relief); <u>Stilp v. HSBC Bank USA, N.A.</u>, Civ. No. 12-3098 (ADM/JJK), 2013 WL 1175025, at *4 (D. Minn. Mar. 20, 2013) ("Plaintiffs defaulted on

their mortgage loan over four years ago.  They seek to declare their mortgage invalid after defaulting; as such, they come to the present case with unclean hands.") (citation omitted), aff'd, 2013 WL 5340399 (8th Cir. Sept. 25, 2013).

Having defaulted on their Mortgage, plaintiffs come to Court with unclean hands and are precluded from pursuing a quiet title claim.  Novak, 2012 WL 3638513, at *4 (citing Santee v. Travelers Ins. Co., 275 N.W. 366, 368 (Minn. 1937)) (finding that the plaintiffs had unclean hands because they were in default on their mortgage and, therefore, that they could not state a quiet title claim), aff'd, 518 F. App'x 498 (8th Cir. 2013).

For all the reasons stated above, the Court finds that defendants' motion to dismiss the quiet title action against them should be granted.

### B.      Slander of Title

To state a claim for slander of title, a plaintiff must allege facts that show: (1) there was a false statement concerning the real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published maliciously; and (4) the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.  Paidar v. Hughes, 615 N.W.2d 276, 279-80 (Minn. 2000) (citation omitted).  To plead malice, plaintiffs "must raise factual allegations sufficient to create a plausible claim that at least one of the [  ] parties acted with a reckless disregard for the truth, 'despite a high degree of awareness of probable falsity.'"  Dunbar, 709 F.3d at 1258 (quoting Brickner v. One Land Dev. Co., 742 N.W.2d 706, 711 (Minn. Ct. App. 2007)); see also Quevli Farms, Inc. v. Union Sav. Bank & Trust Co., 178 Minn. 27, 226 N.W. 191, 192 (Minn. 1929)

(concluding that to be a malicious statement, it must be a "groundless disparagement of the plaintiff's title or property . . . made without probable cause."). The filing of an instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title. Kelly v. First State Bank of Rothsay, 177 N.W. 347, 347 (Minn. 1920).

Plaintiffs responded to defendants' motion to dismiss their slander of title claim by merely restating the allegations from the Complaint, and asserting that defendants knew that the May 11, 2010, notice of pendency and power of attorney was signed by a "renowned robo-signer"—Perez. See Pl.'s Mem., pp. 22-23.

Here, plaintiffs not only did not allege that defendants acted with malice, but more significantly, only asserted that defendants "knew or should have known" that unidentified documents were false, invalid and were not executed by legally authorized individuals. See Complaint, ¶¶ 45-48. These allegations standing alone fail to state a slander of title claim. See Ko, 2013 WL 4052680, at *4 ("Ko alleges that Shapiro drafted and recorded documents that it knew were false because they were executed without the proper authority. But Ko fails to allege that Shapiro acted with malice. Because Ko fails to allege malice, he has not stated a claim for slander of title, and this claim will be dismissed.") (internal citation omitted); Lara v. Federal Nat. Mortg. Ass'n, Civil No. 13–676 (SRN/AJB), 2013 WL 3088728, at *3 (D. Minn. June 18, 2013) (dismissing slander of title claim based on allegation that individuals signing documents lacked authority to do so and stating "[plaintiffs pleaded no plausible facts to support their allegations regarding signing authority.").

For all of these reasons, defendants' motion to dismiss plaintiffs' slander of title claim should be granted.[7]

### C.   Declaratory Judgment

A declaratory judgment is a remedy, not a cause of action.  See, e.g., Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617-618 (Minn. 2007) (a declaratory judgment action may be maintained only where there is a justiciable controversy); Buck v. American Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007) (noting that the Declaratory Judgment Act, 28 U.S.C. § 2201 "creates a remedy, not a cause of action").  In light of the Court's conclusion that plaintiffs' substantive claims must be dismissed under Rule 12(b)(6), "[they are] left with a remedy in search of right."  Scanlon v. Northwest Mortg., Inc., Civ. No. 11-3128 (MJD/TNL), 2012 WL 2885131, *7 (D. Minn. July 13, 2012); see also Lara, 2013 WL 3088728 at *3 (finding that where plaintiff had failed to state a substantive claim, the Amended Complaint also failed to state a claim for declaratory judgment) (citing Weavewood, Inc. v. S & P Home Invs., LLC, 821 N.W.2d 576, [579] (Minn. 2012) ("A declaratory judgment is a procedural device through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists.")).

Plaintiffs' claim for declaratory judgment must be dismissed because there is no legal basis for affording the remedy.

---

[7]   The Court notes that a slander of tile claim is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b).  See Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027, 1032 (8th Cir. 2012) (Rule 9(b) applies to slander of title claims); see also Ko, 2013 WL 3088728, at *4; Pope v. Fed Home Loan Mortgage Corp., Civ. No. 12-3094, 2013 WL 2251001, at *4 (D. Minn. May 22, 2013); Haubrich, 2012 WL 3612023, at *6. Defendants did not argue in favor of dismissal based on plaintiffs' failure to meet this standard.  Suffice it to say, however, having failed to plead any facts to support a slander of title claim, the claim also fails to meet the Rule 9(b) standard.  Therefore, the Court recommends dismissal of the suit with prejudice.

## IV.   RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.      Defendants' Motion to Dismiss [Docket No. 4] be **GRANTED**.

2.      This matter be dismissed with prejudice.[8]


Dated: January 24, 2014

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

---

[8]      "Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend."   Michaelis v. Neb. State Bar Ass'n., 717 F.2d 437, 438-39 (8th Cir. 1983).   Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.   That is the case here.   See McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.   Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (a pro se litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797, at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791, *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).

**NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 6, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.   A party may respond to the objecting party's brief within ten days after service thereof.   All briefs filed under this Rules shall be limited to 3500 words.   A judge shall make a de novo determination of those portions to which objection is made.   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.